IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STEVEN HOTZE, M.D., RICHARD MABRAY, M.D., AND ALLESAN PAIGE STREETER, </br></br>Plaintiffs, </br></br>v. </br></br>THE TEXAS STATE SENATE, AUSTIN OSBORNE, in his official capacity as the Sergeant-at-Arms of the Texas Senate, and DAN PATRICK, in his official capacity as Lieutenant Governor of the State of Texas, </br></br>Defendants. | Civil Action </br></br> No. 6:23-cv-00036 |

**PLAINTIFFS' BRIEF IN SUPPORT OF A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

Plaintiffs Steven Hotze, M.D., Richard Mabray, M.D., and Allesan Paige Streeter file this brief in support of their motion for a temporary restraining order preliminary injunction prohibiting Defendants The Texas State Senate, Austin Osborne, in his official capacity as the Sergeant-at-Arms of the Texas Senate, and Dan Patrick, in his official capacity as Lieutenant Governor of the State of Texas, from enforcing S.R. 35 Rules 10 and 31 and the Gag Order related to Rule 10(a) (collectively, the "Rules") pending the outcome of this litigation. Grounds for this motion include how Defendants are infringing on the First Amendment rights of Plaintiffs and also violating their Fourteenth Amendment rights of one-person, one-vote, such that they are continuously and irreparably harmed. Plaintiffs have a substantial likelihood of prevailing on the merits, the threatened injury to Plaintiffs outweighs the threatened harm the injunction

1

may do to Defendants, and granting the preliminary injunction would serve the public interest.

I. PRELIMINARY STATEMENT

The Rules infringe on two of the most fundamental rights in all of the U.S. Constitution: the First Amendment right to receive information, and the Fourteenth Amendment right to one-person, one-vote. Senators and Representatives who want to communicate with Texas voters, including Plaintiffs, about the Paxton impeachment are entirely gagged by the Rules from doing so. Plaintiffs are thereby prevented from participating in a meaningful manner in this process that seeks to overturn the landslide statewide election of Ken Paxton. In addition, the fundamental principle of one-person, one-vote is violated by how the Rules disenfranchises the entire Texas Senate District 8, which includes a Plaintiff, from voting.

The U.S. Supreme Court has emphasized and repeatedly held as to the right to receive information:

> Our precedents have focused "not only on the role of the First Amendment in fostering individual self-expression but also on its role in **_affording the public access to discussion, debate, and the dissemination_** of information and ideas." *First National Bank of Boston* v. *Bellotti*, 435 U.S. 765, 783 (1978). … In keeping with this principle, we have held that in a variety of contexts "the **Constitution protects the right to receive information and ideas**." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); see *Kleindienst* v. *Mandel*, 408 U.S. 753, 762-763 (1972) (citing cases). This right is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution, in two senses. First, the right to receive ideas follows ineluctably from the *sender's* First Amendment right to send them: "The right of freedom of speech and press ... embraces the right to distribute literature, and necessarily protects the right to receive it." *Martin* v. *Struthers*, 319 U.S. 141, 143 (1943) (citation omitted). "The dissemination of ideas can accomplish nothing if otherwise **willing addressees are not free to receive and consider them**. It would be a barren marketplace of ideas that had only sellers and no buyers." *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965) (BRENNAN, J., concurring).

>More importantly, *the right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom*.

*Bd. of Educ. v. Pico*, 457 U.S. 853, 866-67 (1982) (emphasis added).

"[T]he 'fundamental principle of our representative democracy,' embodied in the Constitution, [is] that 'the people should choose whom they please to govern them.'" *United States Term Limits v. Thornton*, 514 U.S. 779, 783 (1995) (quoting Powel v. McCormack, 395 U.S. 486, 547 (1969) (1969) (internal quotation marks omitted)).

Supreme Court requirements of one-person, one-vote are likewise unwavering. "Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 626, 89 S. Ct. 1886, 1889 (1969). See also *Hadley v. Junior Coll. Dist. of Metro. Kan. City, Mo. City*, 397 U.S. 50, 54 (1970) (affirming the requirement of the one person-one vote requirement in the local election context); *Avery v. Midland Cty., Texas*, 390 U.S. 474, 485-86 (1968) (same). The Fifth Circuit has repeatedly invoked the one-person, one-vote constitutional requirement. *See, e.g.*, *Panior v. Iberville Par. Sch. Bd.*, 498 F.2d 1232, 1234 (5th Cir. 1974) ("We are of the clear view that the principle [of one-person, one-vote] applies.").

The remedy for ongoing infringement of rights under the U.S. Constitution is available, of course, in federal court. The Texas Senate can no more violate the U.S. Constitution and evade judicial review in federal court than a president or a state agency may. This infringement is ongoing and severe, and the need for injunctive relief to stop it is urgent.

## II.     FACTUAL BACKGROUND

Barely six months after Attorney General Ken Paxton was reelected by a landslide margin of 800,000 votes, Defendants are perpetrating an unprecedented interference with constitutional rights, political speech, and representative government of those who elected him and of all Texans. The Defendants trample on the Plaintiffs' right to speak to their duly elected representatives on a matter of statewide importance – the impeachment of Attorney General Ken Paxton. Defendants abuse Plaintiffs' First Amendment rights through S.R. No. 35, which prohibits senators, their staff, and the Lieutenant Governor from discussing or commenting on "any matter relating to the merits of the proceedings before the court of impeachment with Warren Kenneth Paxton, Jr.,….or any persons" other than the senators, the Lieutenant Governor, legal counsel to the Lieutenant Governor, or staff or legal counsel to the senators, (Exhibit "A", Rule 10(b)) Not satisfied with the constitutional violations levied in Rule 10, the Lieutenant Governor entered a Gag Order that expands Rule 10 by, among other things, prohibiting state representatives from communicating with Plaintiffs regarding this inherently political process of the impeachment of a recently elected high-ranking public official. (Exhibit "B") Censuring this political speech is clearly an unconstitutional infringement on the First Amendment.

A leader in working against illegal immigration and taking courageous conservative stances on additional issues, Ken Paxton has long been fully endorsed by former president Donald Trump. President Trump recently stated that General Paxton has "done an outstanding job [as Attorney General]."[1] President Trump further called

---

[1] President Trump, Truth, @realDonaldTrump, May 27, 2023.

the impeachment "illegal, unethical and profoundly unjust" and concluded the impeachment was "ELECTION INTERFERENCE."[2]

General Paxton recently became a target of Texas House Speaker Dade Phelan ("Phelan") and others who opposed him in the 2022 Republican primary. Just days after Texas Attorney General Ken Paxton accused Phelan of presiding over the chamber while drunk as proven by a widely viewed video of the session, and called on him to resign, a GOP-led state House ethics panel heard testimony from investigators detailing what they described as years of misconduct by the attorney general, later recommending his impeachment unanimously. General Paxton was not allowed to present testimony to the secret House ethics panel.

Analogous to the politically motivated impeachments of President Trump, allies of Phelan and others who were not successful in defeating General Paxton in the 2022 primary or general election impeached Paxton in the House of Representatives in the last few days of the 2023 legislative session. The most senior members of both political parties, Republican and Democrat, expressed their dismay during the abbreviated floor debate at the lack of due process and fundamental flaws in this impeachment.

Senator Ted Cruz has described the impeachment process as "a travesty."[3]

Because Phelan and others were not successful in defeating General Paxton in the 2022 primary or general election, it appears they have now sought to use the impeachment process to overturn the will of the voters as expressed in the 2022 election.

---

[2] Id.
[3] Senator Ted Cruz, Twitter, @tedcruz, May 27, 2023.  Senator Cruz tweeted the following: "1/x What is happening to @KenPaxtonTX is a travesty.  For the last nine years, Ken has been the strongest conservative AG in the country.  Bar none.  No attorney general has battled the abuses of the Biden admin more ferociously-and more effectively-than has Paxton."

But it is improper for their rules concerning an impeachment trial to violate First and Fourteenth Amendment rights, as they are.

The Senate Rules imposed for the upcoming impeachment trial infringe on the constitutional rights of the People of Texas, including plaintiffs, in multiple ways. (Exhibit "A") The gag provisions violate the First Amendment by preventing Texans from timely hearing and learning the positions about this proceeding from their senators and state representatives or their agents.  (Exhibits "A" and "B") These Senate rules further infringe on the First Amendment by impeding the right of Texans to petition or communicate with their senators or state representatives prior to their voting on this important matter.

Senate Rule 31 also disenfranchises an entire Texas Senate district, Senate District 8, which is the one represented by Senator Angela Paxton, by prohibiting her from voting. (Exhibit "A"  Rule 31) Finally, the Senate rules run afoul of the Supreme Court holding in *Powell v. McCormack*, 395 U.S. 486 (1969), which prohibited Congress from refusing to seat a member elected by the People, and thereby violate the right of all Texans to a republican form of government under the Guarantee Clause of the U.S. Constitution.

### III.   THE PARTIES.

Plaintiff Steven Hotze, M.D. ("Dr. Hotze") is a resident of Harris County, Texas, a citizen of the United States, and a registered voter in Harris County, Texas. Dr. Hotze has reached out to numerous state senators and state representatives regarding the impeachment of General Paxton and some have responded, indicating they cannot communicate with him regarding the impeachment of General Paxton due to the Gag

Order.  (Exhibit "C") For example, Dr. Hotze reached out to Senator Bob Hall, who voted against the Rules, regarding the impeachment of General Paxton and received the following text response: "Dear Dr. Hotze, I am sorry, but I am banned from speaking to you about the Paxton Impeachment situation because of Lt. Gov. Patrick's Gag order." (Exhibit "D") Dr. Hotze also contacted Rep. Steve Toth, a current member of The Texas House of Representatives, regarding the impeachment of General Paxton. Representative Steve Toth responded, stating, "Hello Dr. Hotze, I am unable to speak on the record about the impeachment proceedings due to gag order by the Court.  I hope you can understand."  (Exhibit "D") Most senators and representatives have not responded to Dr. Hotze efforts to communicate with them regarding the impeachment of General Paxton. (Exhibit "C") Previously, when Dr. Hotze reaches out to senators and state representatives they promptly respond to his texts, emails or calls. (Exhibit "C") Dr. Hotze voted in the 2022 Republican Primary and general election, and he supports General Paxton. Dr. Hotze is opposed to the impeachment of General Paxton and opposed to any vote in the Texas Senate to remove Paxton from office.

Plaintiff Richard Mabray, M.D. ("Dr. Mabray") is a resident of Victoria County, Texas, and a citizen of the United States.  Dr. Mabray is a registered voter in Victoria County, Texas. Dr. Mabray's state senator and state representative are not allowed to communicate with him regarding the impeachment of General Paxton, which violates his First Amendment rights to free speech and to petition regarding grievances.  Dr. Mabray supports General Paxton and is opposed to his impeachment.

Plaintiff Allesan Paige Streeter is a resident of Collin County, Texas, and a citizen of the United States. Ms. Paige is a registered voter in Senate District 8.  Ms.

7

Paige voted in the 2022 Republican Primary and general election. She voted for Senator Angela Paxton. By excluding Senator Paxton from the impeachment process, Ms. Paige is left without representation in a matter of statewide importance.

IV. **JURISDICTION AND VENUE**

Jurisdiction exists in federal court to vindicate infringements of rights under the U.S. Constitution. Here, the infringements are on the First Amendment rights to hear and petition, the Fourteenth Amendment right to "one person one vote," and the right under the Guarantee Clause to a republican form of government. Article IV, Sec. 4. The violations alleged herein are ongoing, and a vote by the Texas Senate on impeachment is scheduled for next month, in September 2023.

The infringement on the constitutional rights of the majority of the Plaintiffs (Drs. Hotze and Mabray) occurs here in the Southern District of Texas, where they are unable to communicate with and listen to public officials in the Texas legislature by virtue of the Rules. Plaintiff Mabray resides in Victoria County and his First Amendment rights to have a meaningful dialog with Texas legislators is infringed there. Plaintiff Streeter is disenfranchised, and thus deprived of her right to "one person one vote," where she resides in Senate District 8. All Plaintiffs are deprived in the locations of their residences of their rights to a representative government under the Guarantee Clause.

V. **ARGUMENT**

"The courts, in proper cases, may always inquire whether any department of the government has acted outside of and beyond its constitutional authority." *Ferguson v. Maddox*, 114 Tex. 85, 100 (Tex. 1924). The acts of the Senate, sitting as a court of

impeachment, are not exempt from this judicial power….." *Id.* The Senate is bound by the Constitution. *Id.* It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-331, (5th Cir. 2020).

"The first amendment guarantees the unrestricted flow of information into the market place of ideas. This first amendment protection extends not only to those who contribute to the market place of ideas, but necessarily extends to those who seek to benefit from the resultant dialogue." *Vasquez v. Hous. Auth.*, 271 F.3d 198, 202 (5th Cir. 2001). Yet Senate Rule 10 and the companion Gag Order trample on Plaintiffs' First Amendment and other constitutional rights. As shown below, Plaintiffs easily satisfy the requirements for a preliminary injunction: they are likely to succeed on the merits of their case, they have irreparable harm and no adequate remedy at law if the injunction is not granted, the balance of equities favors the Plaintiffs, and the public interest favors the Plaintiffs.

### A. Standard for a Preliminary Injunction

As recently held by the Fifth Circuit, a preliminary injunction should be granted when four elements are satisfied:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023).

"And of course, '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' *Google, Inc. v. Hood*,

822 F.3d 212, 227 (5th Cir. 2016) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). "The First Amendment protects the right to hear as well as to speak." *Basiardanes v. Galveston*, 682 F.2d 1203, 1211 (5th Cir. 1982) (quoting *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Counsel, Inc.*, 425 U.S. 748 (1976)). "The First Amendment, applicable to a state university through the Fourteenth Amendment, embraces the right to hear." *Brooks v. Auburn Univ.*, 412 F.2d 1171, 1172 (5th Cir. 1969) (citing *Martin v. City of Struthers*, 319 U.S. 141 (1943); *Lamont v. Postmaster General*, 381 U.S. 301 (1965)).

### B. Application to this Case

Plaintiffs' Motion for a Preliminary Injunction addresses two claims — Rule 10 and the Gag Order violate the First Amendment and the exclusion of Senator Angela Paxton violates the "one person one vote rule." Plaintiffs need only demonstrate a likelihood of success on one claim to obtain a preliminary injunction.

#### 1. Likelihood of Success on the Merits

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *McCutcheon v. FEC*, 572 U.S. 185, 210 (2014) (citation omitted). "'There is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs, includ[ing] discussion[] of candidates [and elected officials].'" Id. at 151–52 (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011)).

The free flow of political speech "is central to the meaning and purpose of the First Amendment." *Citizens United v. FEC*, 558 U.S. 310, 329 (2010). [U]nencumbered discussion about political candidates and issues is "integral to the operation of the system of government

established by our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612 (1976). "The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United*, 558 U.S. at 339.

Plaintiffs' First Amendment claim is premised on the argument that their political is speech protected by the First Amendment, and therefore Rule 10 and the Gag Order prohibit Plaintiffs from communicating with their state senators or state representatives or their agents on a political matter of statewide importance. (See Complaint and Exhibits "C", "D", "E")

To prevail on their claim of First Amendment violations related to Section 1983, Plaintiffs must establish the following:

a. **Plaintiff engaged in constitutionally protected activity;**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The Constitution's Supremacy Clause, of course, invalidates state and local laws that interfere with or are contrary to federal law. *See* U.S. Const., Art. VI, cl. 2; *Gibbons v. Ogden*, 22 U.S. 1, 6 L. Ed. 23 (1824). The core value underlying the Free Speech Clause of the First Amendment is the "public interest in having free and unhindered debate on matters of public importance." *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County, Ill*., 391 U.S. 563, 573, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). Thus, to the extent that Rule 10 or the Gag Order prohibit or infringe upon speech and conduct protected by the First Amendment, it cannot be enforced with respect to that speech and conduct.

Pursuant to the Supremacy Clause, all state and local laws must comply with the First Amendment and, as applied to certain conduct, may not unconstitutionally chill protected speech.

As demonstrated in Exhibits C, D, and E, Plaintiffs engage in constitutionally protected political speech, i.e., they have tried to speak with their state representative and senators regarding a matter of state wide importance only to be rebuffed by Rule 10 and the Gag Order. (Exhibits "C", "D", "E") Based on Rule 10 and the Gag Order, the state representative and senators have refused to speak with or consider Plaintiffs' views regarding the impeachment of General Paxton. (Exhibits "C", "D", "E") This directly infringes on Plaintiffs' right to hear under the First Amendment, under the authorities cited above.

### b. Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity

Plaintiffs have First Amendment injuries to their rights of freedom of speech, for which the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

### c. Defendants' actions were substantially motivated against his exercise of constitutionally protected conduct.

Based the affidavits attached to this motion, Exhibits C, D, and E, Plaintiffs are likely to be able to establish each of these elements.

In multiple cases the Supreme Court upheld First Amendment protections of the speech of elected officials, affording that speech as robust protection as the speech of public citizens. *Id.* at 525 (citing, e.g., *Bond v. Floyd*, 385 U.S. 116, 133-35, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966) (excluding state representative from membership in legislature because of criticism of federal policies in Vietnam violated right to free expression under First Amendment)). Indeed,

12

affording First Amendment protection to elected officials, who are elected for the very reason of expressing their constituents' opinions on matters of public concern, is imperative. *See Bond*, 385 U.S. at 135-36 ("The manifest function of the First Amendment in representative government requires that legislators be given the widest latitude to express their views on issues of policy."). The Supreme Court has generally indicated that "statements by public officials on matters of public concern must be accorded First Amendment protection. . . . ." *Pickering*, 391 U.S. at 574 (citing *Garrison v. State of La.*, 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964)).

The Fifth Circuit has expressed some approval of the decision in a case concerning public speech by trustees elected to a public community college district. *See Wilson v. Houston Cmty College System*, 955 F.3d 490, 493 (5th Cir. 2020). In *Wilson*, a trustee publicly criticized his fellow board members by arranging robocalls regarding the board's challenged actions and providing an interview with a local radio station. *Id.* In response, the board excluded the trustee from an executive session, in which they adopted a resolution publicly censuring the trustee for his actions. *Id.* at 493-94. The district court dismissed the case for lack of standing, concluding that there was no constitutional injury because the censure did not infringe on the plaintiff's free speech rights. *Id.* at 496-97. In reversing, in addition to finding the plaintiff had standing, the Fifth Circuit emphasized the critical "role that elected officials play in our society," which "makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Id.* at 497 (citing *Rangra*, 566 F.3d at 524). The Court went on to hold that a censure of publicly elected officials can be a cognizable injury under the First Amendment. *Id.*

Under these precedents, elected officials enjoy the same First Amendment protections as they would as a public citizen. Furthermore, the speech related to Rule 10 and the Gag Order is

13

political speech, preventing communication related to the impeachment of General Paxton between Plaintiffs and their state senators and state representatives. This type of political speech is afforded the highest level of First Amendment protection. *See id.* at 498 (explaining that strict scrutiny is used to assess the government's regulation of an elected official's speech). Accordingly, to defend their actions, Defendants must show that Rule 10 and the Gag Order at issue further a compelling interest and are narrowly tailored to achieve that interest. *Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 438 (5th Cir. 2014). Defendants are unlikely to be able to do so at a trial on the merits.

Defendants' Rule 10 and Gag Order prohibits Plaintiffs from communicating with their state senators and state representatives regarding a matter of statewide importance. Specifically, the state senators and representatives are prohibited from "discuss[ing] or comment[ing] on any matter relating to the merits of the proceedings before the court of impeachment with Warren Kenneth Paxton, Jr.,…or any persons other than members of the court, the presiding officer of the court, legal counsel to the presiding officer, or staff or legal counsel to members of the court." (Exhibit "A") Taken to its logical extension, Rule 10 and the gag order prohibit Plaintiffs from speaking or communicating with their state senators or representatives regarding the impeachment of General Paxton.

Even if Defendants could identify a compelling government interest in limiting the speech of elected officials and that of the Plaintiffs, they are unlikely to be able to demonstrate that Rule 10 and the Gag Order are narrowly tailored to advance that interest.

Rule 10 and the Gag Order are used to prohibit political speech, which often arises in the context of an antagonistic debate over matters of public concern, based solely on its content. A trial on the merits is unlikely to be able to demonstrate that Rule 10 or the Gag Order can

14

withstand strict scrutiny as applied to Plaintiffs' speech at issue. Plaintiffs therefore are likely to prevail on the merits of their First Amendment claims.

Plaintiffs are also likely to prevail on their other claims of constitutional violations. Specifically, the Rules deprive Plaintiffs and particularly Plaintiff Streeter of the right to "one person one vote" by barring Senator Angela Paxton from voting on the impeachment. "In a nutshell, the 'one man one vote' rule means that 'each person's vote counts as much, insofar as it is practicable, as any other person's.'" *Voter Info. Project, Inc. v. Baton Rouge*, 612 F.2d 208, 210 (5th Cir. 1980) (quoting *Hadley v. Junior College District*, 397 U.S. 50, 54 (1969)). This fundamental principle was described in a Fifth Circuit concurrence as the "revolutionary one person, one vote line of cases." *Thomas v. Reeves*, 961 F.3d 800, 808 (5th Cir. 2020) (Costa, Owen, Davis, Stewart, Dennis, and Higginson, JJ., concurring with an en banc ruling) (citing *Reynolds v. Sims*, 377 U.S. 533 (1964)).

"The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969). The Rules directly violate this fundamental constitutional principle by fully disenfranchising all of the voters in the district of Sen. Angela Paxton, and simultaneously altering the relative representation of every other voter in Texas. The Rules thereby violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. Nothing in the Texas Constitution or anywhere else can, or possibly could, justify this infringement on this fundamental constitutional right. Other senators having conflicts of interests, including even potentially receiving monetary incentives, are fully allowed to vote in the impeachment trial except for Sen. Angela Paxton.

General Ken Paxton and Sen. Angela Paxton were both elected by landslide margins less than a year ago, and the U.S. Constitution Guarantee Clause requires upholding a republican form of government. While there is authority that a violation by Congress of the Guarantee Clause is non-justiciable, those concerns are not present here. As to interference with representative government in Texas, as at issue here, the Fifth Circuit has held that "Texas is governed by a freely elected legislature and executive, not a monarchy, military dictatorship, or any other type of government which would offend the Guarantee Clause of the Constitution." *Deer Park Indep. Sch. Dist. v. Harris Cty. Appraisal Dist.*, 132 F.3d 1095, 1099-100 (5th Cir. 1998). The Rules plainly violate basic norms of representative government.

2. **Irreparable Harm**

Plaintiffs have established that she will suffer irreparable harm if an injunction is not issued to enforcement of Rule 10 and the Gag Order. Plaintiffs have First Amendment injuries to their rights of freedom of speech, for which even a brief infringement for a short period of time "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (quoted in full above).

3. **Balance of Harms**

The Court should also conclude that the injury to Plaintiffs—the loss of their ability to communicate with their duly elected officials without recourse—outweighs any damage that would be caused by an injunction prohibiting the enforcement of Rule 10 and the Gag Order. The Defendants are unable to articulate any harm, let alone harm comparable to that suffered by Plaintiffs if their First Amendment rights are trampled on.  Defendants take an oath and affirmation to be impartial.  Tex. Const. art. 15, sec. 3.  The oath eliminates any potential harm resulting from communications state senators may have with their constituents or other Texans.

The impeachment by the Texas House has concluded. No harm can result from Plaintiffs communicating with their state representatives regarding the impeachment of General Paxton.

### 4. Public Interest

Finally, the recommended injunction will not disserve the public interest. As with the "no adequate remedy" and "irreparable harm" factors, the "public interest" factor is also categorically met if First Amendment freedoms are at stake. "'[I]njunctions protecting First Amendment freedoms are always in the public interest.'" *Wisconsin Right To Life, Inc. v. Baland*, 751 F.3d 804, 830 (7th Cir. 2014) (quoting Alvarez, 679 F.3d at 590).

The Defendants and the impeached, General Paxton, were elected by members of the public to represent their interests. The public has an interest in expressing their views on a matter of public concern. By enjoining Rule 10 and the Gag Order and allowing Plaintiffs to communicate with their state senators and state representatives regarding this issue of public concern, the Court advances this public interest.

This court has repeatedly held, in the pre-enforcement context, that "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007). *See also Freedom Path, Inc. v. I.R.S.*, 913 F.3d 503, 507 (5th Cir. 2019) (same); *Fairchild v. Liberty ISD*, 597 F.3d 747, 754-55 (5th Cir. 2010) (same); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2010) (same) ("As the district court noted, '[t]he First Amendment challenge has unique standing issues because of the chilling effect, self-censorship, and in fact the very special nature of political speech itself.'").

### 5. The Balance of Equities Favors a Preliminary Injunction

Just as "the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional," *Higher Soc'y v. Tippecanoe City*, 858 F.3d 1113, (7th Cir. 2017) (quoting *Alvarez*, 679 F.3d at 590), one can imagine little harm, much less irreparable harm, to a nonmoving governmental party who is enjoined from prohibiting political speech related to a matter of statewide importance from occurring. *See id*. (finding that the balance of harms, including harm to the nonmoving party by the granting of an injunction, typically favors granting a preliminary injunction in First Amendment cases). Therefore, in First Amendment cases, "the balance of harms normally favors granting preliminary injunctive relief." *Higher Soc'y*, 858 F.3d at 1116; *see also Alvarez*, 679 F.3d at 589; *Korte*, 735 F.3d at 666. Thus, in such cases, "the likelihood of success on the merits is usually the decisive factor." *Wisconsin Right To Life, Inc.*, 751 F.3d at 830. These truths apply no less in this case. Plaintiffs are likely to succeed on the merits in this case. Moreover, the additional factors weigh in favor of Plaintiffs. Accordingly, in this case "the balance of harms . . . favors granting preliminary injunctive relief." *Higher Soc'y*, 858 F.3d at 1116.

## VI. CONCLUSION

Because Rule 10 and the Gag Order prohibit Plaintiffs from engaging in political speech with their duly elected officials on a matter of statewide importance, which constitute speech protected by the First Amendment, and because there is no recognized justification for such a prohibition, Plaintiffs are likely to succeed on the merits in this case. Likewise, because the loss of First Amendment freedoms is at stake in this case, Plaintiffs have irreparable harm if the injunction is not granted and no adequate remedy at law; the public interest favors the Plaintiffs; and the balance of equities favors the Plaintiffs. As such, Plaintiffs meet the requirements for a preliminary injunction. For these reasons, and all others stated above, Plaintiffs respectfully

request this Court grant the preliminary injunction and enjoin enforcement of Rule 10, 31 and the Gag Order which are the subject of this suit.

Respectfully submitted,

**WOODFILL LAW FIRM, PC**

 /s/ *Jared R. Woodfill*
Jared R. Woodfill
State Bar No. 00788715
3 Riverway, Suite 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com (service)
jwoodfill@woodfilllaw.com (non-service)

Dated:  August 6, 2023