UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STEVEN HOTZE, M.D., <br> RICHARD MABRAY, M.D., and <br> ALLESAN PAIGE STREETER, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE TEXAS STATE SENATE, <br> AUSTIN OSBORNE, in his official <br> capacity as the Sergeant-at-Arms <br> of the Texas Senate, and <br> DAN PATRICK, in his official <br> capacity as Lieutenant Governor <br> of the State of Texas, <br><br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 6:23-cv-00036 |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MOTION TO DISMISS

Defendants Dan Patrick, in his official capacity as Lieutenant Governor of the State of Texas, the Texas State Senate, and Austin Osborne, in his official capacity as the Sergeant-at-Arms of the Texas State Senate (the "Defendants") file this opposition to Plaintiffs' request for a temporary restraining order and preliminary injunction (Dkt. 3, 4) and their motion to dismiss this matter brought by Plaintiffs.

### SUMMARY OF OPPOSITION AND MOTION

At a fundamental level, Plaintiffs have failed to plead a case that falls within this Court's subject-matter jurisdiction. Plaintiffs lack standing because they have not and cannot plead nor prove an injury by the challenged rules at issue, which

relate to the conduct of Texas legislators and legislative staff, the parties to and witnesses in pending impeachment proceedings before the Texas Senate, and the lawyers and staff representing those specified groups of persons and parties in those proceedings. Plaintiffs are none of those persons or parties, and cannot otherwise show that their First Amendment or other constitutional rights are actually being injured by the challenged rules, and the Court's analysis of Plaintiffs' claims and requests for relief can and should end there.

Even if the Court were to analyze the matter beyond basic standing principles, the Court could and should conclude that the Defendants are immune from the suit under various immunity doctrines, and that principles of federalism would require this Court to abstain. Even if all of these threshold bars to Plaintiffs' suit were not enough for the Court to dispose of Plaintiffs' claims and case—which is exactly what each of those bars does—Plaintiffs could never meet their high burden for showing entitlement to any of the preliminary relief they seek. Accordingly, the motion for preliminary relief should be denied, and the Court should further dismiss the case for lack of subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1).

As the United States Court of Appeals for the Fifth Circuit has recently reiterated in an en banc decision:

> [A] federal court may not rule on the merits of a case without first determining its jurisdiction, but there is no mandatory "sequencing of jurisdictional issues," and a federal court has leeway "to choose among threshold grounds for denying audience to a case on the merits."

*Daves v. Dallas County*, 64 F.4th 626, 623 (5th Cir. 2023) (en banc) (quoting *Sinochem Int'l v. Malaysia Int'l Shipping*, 549 U.S. 422, 431 (2007)).

## ARGUMENT AND AUTHORITIES

### I. Plaintiffs Lack Standing

The judicial power of federal courts under Article III of the U.S. Constitution is limited to the resolution of "Cases" or "Controversies." *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 545 (5th Cir 2019) (quoting U.S. CONST. art. III, § 2). When a plaintiff lack standing, "the resulting litigation cannot fairly be called a case or controversy and the court has no power to declare the law." *Id.* at 546 (quotations omitted). "For the federal courts to decide questions of law arising outside of cases or controversies would be inimical to the Constitution's democratic character." *Id.* (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011)).

To establish standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *E.g., Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141, 2157 (2023). An injury in fact is a "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Ctr. for Biological Diversity*, 937 F.3d at 537 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs cannot establish standing for any of their First Amendment or their "one person, one vote" claims because they have not

shown an injury in fact traceable to the challenged conduct of any of the Defendants, much less any injury that would be redressed by any relief they seek.

### A. First Amendment Claims

To establish an injury in fact in a First Amendment challenge, the plaintiff must produce evidence of an intention to engage in conduct that is arguably protected by a constitutional interest but is nonetheless proscribed by the government. *E.g., Miss. State Dem. Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008).

None of the Plaintiffs have shown that Rule 10 of the Rules of Impeachment or the Gag Order prohibit any of their conduct, because those provisions on their face govern only the conduct of Texas legislators (including the Lieutenant Governor who signed the order as Presiding Officer of the Court of Impeachment), legislative staff, parties and witnesses, and lawyers for those persons and parties.

Rule 10 states:

> ***No member of the court, staff of members of the court, presiding officer of the court, and legal counsel of the presiding officer*** shall discuss or comment on any matter relating to the merits of the proceedings before the court of impeachment with Warren Kenneth Paxton, Jr., and his counsel, the House Board of Managers and their counsel, or any persons other than members of the court, the presiding officer of the court, legal counsel to the presiding officer, or staff or legal counsel to members of the court.

Dkt. 1-1 at 8 (emphasis added).

The Gag Order states:

> ***Any member of the court; member of the House of Representatives; party to the trial of impeachment; witness in the trial of impeachment; or attorney, employee, or agent of these individuals*** shall not furnish any statement or information, or make or authorize the

4

> making of an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication, if the person making the statement knows or reasonably should know that it will have a substantial likelihood of materially prejudicing the trial of impeachment, pose a serious threat to the constitutional guarantees to a fair trial, or impair the court's ability to maintain a fair and impartial court.

Dkt. 1-2 at 2 (emphasis added).

Plaintiffs do not plead, nor could they ever prove, that they are included among any of the categories of people covered by Rule 10 or the Gag Order. Instead, they plead that they "are Texas residents" who sue for claimed "violation of *Plaintiffs'* First Amendment and additional rights under the U.S. Constitution." Dkt. 1 at 1 (emphasis added). As such, Plaintiffs could never plead or prove that anything about Rule 10 or the Gag Order proscribes any speech from any of them, including about the impeachment proceedings.

Instead, Plaintiffs claim that their rights to talk to Texas legislators are infringed by the challenged Rules of Impeachment and Gag Order. In support of this position, Plaintiffs cite *Basiardanes v. Galveston*, 682 F.2d 1203 (5th Cir. 1982), but the Fifth Circuit in that case found that the plaintiff had *no standing* to bring his First Amendment claims, as he had not established the existence of a "willing speaker" other than himself. *Id.* at 1211. Likewise, *Board of Education, Island Tree Union Free Sch. Dist. No. 26 v. Pico*, does not support Plaintiffs' position on standing. That case held only that "in light of the special characters of the school environment," students had standing to challenge a school board's decision to remove certain books from school libraries. 457 U.S. 853, 868 (1982) (quoting *Tinker v. Des Moines Indep.*

5

*Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). This case does not involve student access to books in libraries. Plaintiffs cite no authority for the proposition that any of them has a First Amendment right to have Texas legislators talk with them at any time of their choosing, on any subject of their choosing. Plaintiffs' position is akin to arguing that a legislator's failure to respond to a constituent's letter violates the letter-writer's First Amendment rights. By their own pleadings, they acknowledge that they cannot assert the Free Speech rights of others—including persons who are included in the categories of persons and parties actually covered by Rule 10 or the Gag Order—to speak on anything, much less the impeachment proceedings.

Plaintiffs simply have no constitutional rights to assert with respect to the Texas Senate rules they challenge, and cannot assert the rights of individuals who are not before the Court, such as the legislators who allegedly refused to discuss the impeachment proceedings with any of the Plaintiffs and who are not parties. "A party must ordinarily assert only 'his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Vote.Org v. Callanen*, 39 F.4th 297, 303 (5th Cir. 2022) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). A very narrow exception exists when "the party asserting the right has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.* (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). Neither of these factors is present here. Plaintiffs can neither plead nor prove that any of them is in any relationship with members of the Legislature that is akin, for example, to a doctor's relationship with a patient. *See*

6

*Singleton v. Wulff*, 428 U.S. 106, 118 (1976). This is far from one of the rare situations in which third-party standing is needed to vindicate the rights of those who cannot stand up for themselves.

Because neither Rule 10 nor the Gag Order limits Plaintiffs' ability to speak about the impeachment proceedings, and because Plaintiffs cannot otherwise show an injury to their First Amendment rights, Plaintiffs have not demonstrated an injury in fact traceable to Defendants, much less one that would be redressable through the relief requested here.

### B. "One Person, One Vote" Claims

Plaintiff Streeter raises a claim that Rule 31 of the Rules of Impeachment passed by the Texas Senate somehow violates the principle of "one person, one vote" established in *Reynolds v. Sims*, 377 U.S. 533 (1964). Plaintiff Streeter alleges that she voted for Senator Angela Paxton in 2022 and argues that Rule 31 of the Rules of Impeachment is unconstitutional because it excludes Senator Paxton from voting or participating in deliberations during the impeachment proceedings. The "one person, one vote" argument does not give Plaintiff Streeter standing to challenge Rule 31.

The "one person, one vote" doctrine relates to the requirement "that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." *Id.* at 577. Plaintiff Streeter's allegations do not concern any issue of malapportionment, *i.e.*, legislative districts with different ratios of voters to legislators. Accordingly, she could never

hope to establish an "invasion of a legally protected interest" to establish an injury in fact and therefore lacks standing. *Ctr. for Biological Diversity*, 937 F.3d at 537.

## II. Plaintiffs' Claims Are Barred by Legislative and Judicial Immunity

In federal court, state officials "enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause." *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980). This immunity from suit "does not distinguish between actions for damages and those for prospective relief." *Id.* at 733. It protects not only state legislators and but any state official who acts in a legislative capacity, such as the Supreme Court of Virginia and its Chief Justice in the promulgation of rules regulating the practice of law. *Id.* at 731. "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

When state officials "play the role they have been given in impeachment proceedings, they act within the sphere of legitimate legislative activity and within their legislative capacities" and must "be accorded legislative immunity." *Larsen v. Senate of the Commonwealth of Pa.*, 152 F.3d 240, 251 (3d Cir. 1998). Even though impeachment proceedings are "not debating, drafting, or voting on legislation," they fall within the "sphere of legitimate legislative activity." *Id.* This is because impeachments "take place in session and are the official business before the legislature." *Id.* at 250. For the same reason, the Supreme Court has held that the

8

issuance of a subpoena duces tecum from a subcommittee of the U.S. Senate falls within the "legitimate legislative sphere." *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975).

In *Nixon v. United States*, the Supreme Court held that the propriety of federal impeachment procedures was a decision committed to the U.S. Senate by the Constitution and was therefore not an appropriate subject of adjudication by the courts. 506 U.S. 224 (1993). As the Court explained: "Judicial involvement in impeachments proceedings, even if only for purposes of judicial review, is counterintuitive because it would eviscerate the 'important constitutional check' placed on the Judiciary by the Framers." *Id.* at 235 (quoting THE FEDERALIST NO. 81).

The doctrine of judicial immunity also applies in this case. *See Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985) ("Absolute judicial immunity extends to all judicial acts which are not performed in the clear absence of all jurisdiction."). Defendants assert that impeachment proceedings in Texas are both legislative and judicial in nature and are entitled to the protections of both legislative and judicial immunity. Article 15, § 3 of the Texas Constitution describes the Texas Senate as a "Court of Impeachment," and the Texas Supreme Court in *Ferguson v. Maddox*, 263 S.W 888 (Tex. 1924), described impeachment proceedings as judicial in character in explaining why the impeachment of Governor James Ferguson during a special
9

session was not invalid on the ground that it was not listed in the Governor's call for the special session.[1]

For these reasons, Plaintiffs' claims are barred by both legislative and judicial immunity.

### III. Principles of Federalism Embodied in the Tenth Amendment and Federal-Court Abstention Doctrines Do Not Support Interference With the Texas Senate's Impeachment Proceedings

Plaintiffs seek the Court's involvement in managing the Texas Senate's rules for the impeachment proceedings pending before that body. Such requests run afoul of the Tenth Amendment's anti-commandeering doctrine. The Supreme Court held in *Murphy v. NCAA*, 138 S. Ct. 1461 (2018), that the United States Congress may not constitutionally direct states to either enact or refrain from enacting laws. *Id.* at 1478–84. Similarly, requests for a federal court to tell the Texas Senate how to operate its own impeachment proceedings, under rules derived by the legislative body and its presiding officer acting on behalf of the legislative body, impermissibly cross the boundaries between federal and state governance.

To avoid this constitutional problem, the Court would be required to abstain from hearing this case. Federal-court abstention doctrines, rooted in the principles

---

[1]The Supreme Court in *Pulliam v. Allen*, 466 U.S. 522 (1984), held that judicial immunity does not bar a suit for prospective injunctive relief against a judicial officer acting his judicial capacity. Therefore, only the Texas Senate asserts judicial immunity at this stage, but any back-door efforts to restrict the Texas Senate's role in administering the Court of Impeachment through the Lieutenant Governor as Presiding Officer or the Texas Senate's Sergeant-at-Arms runs afoul of judicial immunity principles as well.

of federalism, wholly undercut Plaintiffs' requests for declaratory and injunctive relief.

Under *Railroad Commission of Texas v. Pullman Co.*, federal courts must abstain when a state court's clarification of state law might make a federal court's constitutional ruling unnecessary. 312 U.S. 469 (1941). "Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies." *Id.* at 500. This case should be dismissed on *Pullman* abstention grounds to "avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Id.*

Furthermore, under *Colorado River Water Conservation District v. United States*, federal courts may abstain from exercising federal jurisdiction over a dispute that is also pending in a parallel state-court proceeding. 424 U.S. 800 (1976). "In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums." *Id.* at 818 (citations omitted). Plaintiffs initially sued Defendants in state court in Travis County in July 2023, but in a clear attempt to get two bites at the apple, filed this duplicative suit in the Southern District of Texas in August 2023. Even absent the clear threshold bars to subject-matter jurisdiction discussed above, under *Colorado River*, this Court could readily dismiss this duplicative case.

## IV. Plaintiffs' Claims Against the Texas State Senate Are Also Barred by Sovereign Immunity

Sovereign immunity prohibits state entities and officials from being sued without their consent. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). The "Texas Senate is a state entity for [sovereign immunity] purposes, and [Plaintiffs'] claims [against the Senate] . . . must be dismissed." *Crouse v. Texas State Senate*, No. 3:20-cv-00114-X, 2021 WL 3625082, at *4 (N.D. Tex. Mar. 15, 2021). Furthermore, as the rules passed by the Texas Senate require the entry of the Gag Order challenged by Plaintiffs, Rule 10(a) (Dkt. 1-1 at 8), Plaintiffs cannot avoid the impact of sovereign immunity through any back door by choosing to sue the Lieutenant Governor and the Senate's Sergeant-at-Arms in their official capacities.

## V. Plaintiffs Have Not Met Their High Burden for Preliminary Relief

Based on the foregoing, the Court need not reach the merits—or lack thereof—of Plaintiffs' requests for temporary or preliminary injunctive relief. Even if the Court had subject-matter jurisdiction to consider the request, it would find the requests wholly lacking.

As the Court is well aware, "[a] preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). It "should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010).

The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### A. Plaintiffs Could Never Establish a Likelihood of Success on the Merits

#### 1. Rule 10 and the Gag Order Do Not Violate the First Amendment

A pretrial publicity or "gag" order readily satisfies First Amendment scrutiny if it is "based on a reasonably found substantial likelihood that comments from the lawyers and parties might well taint the jury pool, . . . is the least restrictive corrective measure available to ensure a fair trial, and is sufficiently narrowly drawn." *United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000). "Intense publicity surrounding a criminal proceeding—what Justice Frankfurter referred to as 'trial by newspaper'—poses significant and well-known dangers to a fair trial." *Id.* (quoting *Pennekamp v. Florida*, 328 U.S. 331, 361 (1946) (Frankfurter, J., concurring)). "Accordingly, trial courts have 'an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.'" *Id.* (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368 (1979)).

Rule 10 and the Gag Order fall squarely within the parameters outlined in *Brown* and other cases upholding pretrial publicity orders. For its part, Rule 10(b) is no different than the standard professional rules of conduct for lawyers and judges barring *ex parte* communications with judges, jurors, and court staff. The Gag Order, as required by the Rules of Impeachment passed by the Texas Senate, is based on the Court of Impeachment's "find[ing] that there has been extensive publicity

13

surrounding the trial of impeachment." Dkt. 1-2 at 1. This finding is supported by specific examples cited in the Gag Order itself, and with respect to the impeachment trial at issu, the finding can be further supported in seconds by anyone running a web-engine search. The Gag Order finds that "out-of-court statements relating to the matters of this impeachment proceeding pose a serious and imminent threat to Warren Kenneth Paxton, Jr.'s, right to a fair trial of impeachment, the ability of the members of the court to remain fair and impartial, and to the fair administration of justice." Dkt. 1-2 at 1. The Gag Order cites examples of "inflammatory and prejudicial statements" that have been made to the media. Dkt. 1-2 at 5.

Finally, the Gag Order contains qualifying language that makes it narrowly tailored, covering only statements that "will have a substantial likelihood of materially prejudicing the trial of impeachment, pose a serious threat to the constitutional guarantees of a fair trial, or impair the court's ability to maintain a fair and impartial court." Dkt. 1-2 at 2. The Gag Order explicitly references Rule 3.07 of the Texas Disciplinary Rules of Professional Conduct and goes on to specify:

> A person subject to this order is not prohibited by virtue of this order from making out-of-court statements reciting, without comment, information contained in public records, the scheduling or result of any proceeding, the general nature of the proceedings, or any other statement which would not violate the provisions of this order.

On its face, the Gag Order contains reasonable findings that public comments on the impeachment proceedings (beyond the types of general comments not within the Gag Order's scope) would create a substantial likelihood of prejudice, and the Gage Order

14

narrowly tailors its provisions to protect the integrity of the proceedings. *E.g., Brown*, 218 F,3d at 418–19.

To the extent Plaintiffs' motion can be construed as arguing that the Rule 31 recusal provision violates the First Amendment, as indicated above, none of Plaintiffs has standing to make that argument. In any event, any such argument would be squarely foreclosed by such cases as *Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117 (2011), which held that Nevada's requirement that public officials recuse themselves from voting on matters in which they have a conflict of interest did not violate the First Amendment.

For these reasons, Plaintiffs could never show any likelihood of success on their First Amendment claims.

### 2. Rule 31 Does Not Violate the Principle of "One Person, One Vote"

As discussed above, Plaintiff Streeter has no claim of a violation of "one person, one vote." The "one person, one vote" rule under the Equal Protection Clause concerns a requirement that legislative districts be "as nearly of equal population as is practicable." *Reynolds v. Sims*, 377 U.S. 533, 577 (1964). Plaintiff Streeter does not even purport to identify how Rule 31 of the Rules of Impeachment affects malapportionment, *i.e.*, legislative districts with different ratios of voters to

legislators. Nor could there be any evidence in the record to support such a meritless claim.[2]

## B. Plaintiffs Have Not Shown an Irreparable Injury

As indicated above, Plaintiffs could never show any injury traced to the challenged rules relating to the pending impeachment proceedings, much less an irreparable one. They have not and cannot establish that their Free Speech or other constitutional rights are proscribed by any of the rules.

Furthermore, it is clear that to the extent that Plaintiffs believe that their rights have been infringed, they have delayed the exercise of those rights.

> "Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Gonannies, Inc. v. Goupair.Com, Inc.,* 464 F. Supp. 2d 603, 609 (N.D.Tex.2006) (Lindsay, J.) (internal quotations omitted); *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985). Where parties fail to explain or justify the delay between the facts underlying the need for the preliminary injunction and the motion for the injunction, courts readily decline motions to enjoin for lack of urgency. *Ellipse Communications,* 2009 WL 497268, at *1–2 (N.D. Tex. Feb 26, 2009) (O'Connor, J.) (no explanation provided); *Gonannies,* 464 F. Supp. 2d at 609 (no irreparable injury where plaintiff waited six months after discovering allegedly infringing use before seeking injunction and provided no explanation); *Innovation Ventures, LLC v. Ultimate Lifestyles, LLC,* No. 4:08–CV–232, 2009 WL 1490588, at *3 (E.D. Tex. May 27, 2009) (no irreparable injury where plaintiff waited nine months after learning of infringing sale and provided no explanation).

---

[2]In *Wells v. Edwards*, 409 U.S. 1095 (1973), the Court held that the principle of "one person, one vote" does not apply to the judiciary. As discussed previously, Article 15, § 3, of the Texas Constitution describes the Texas Senate as a "Court of Impeachment," and the Texas Supreme Court in *Ferguson v. Maddox*, 263 S.W 888 (Tex. 1924), described impeachment proceedings as judicial in character.

*ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 698 (N.D. Tex. 2015). Here, Plaintiffs challenge rules that were passed by the Texas Senate on June 21, 2023, and a Gag Order that the Lieutenant Governor as Presiding Officer entered under the Rules of Impeachment on July 17, 2023. The impeachment trial is scheduled to being on September 5, 2023—or approximately two weeks from the hearing before this Court. Plaintiffs' failure to prosecute any claims they believe they have in a timely manner further demonstrate the lack of any immediate or irreparable injury.

### C. An Injunction Would Be Contrary to the Public Interest

The public interest is best served by allowing the Rules of Impeachment and Gag Order to stay in effect. The Rules of Impeachment were adopted by the duly elected members of the Texas Senate in connection with their solemn obligation to conduct a fair impeachment proceeding under Article 15 of the Texas Constitution. Rule 10 and the Gag Order, which was issued pursuant to Rule 10(a) as passed by the Texas Senate, serve to ensure that the issues raised in the impeachment are litigated at the trial in the Senate rather than through potentially inflammatory and misleading statements in the media. It is within the purview of the Texas Senate to strike a reasonable balance between concerns about conflicts of interest and the need to ensure that all Senators are present at the trial in the Senate. These measures were adopted to ensure a fair, impartial trial in the pursuit of justice, and allowing them to remain in effect is in the public interest.

## CONCLUSION AND PRAYER

The Defendants respectfully request that the Court deny the motion for temporary and preliminary injunctive relief; that the Court dismiss this case for lack of jurisdiction; and that the Court grant the Defendants all other such relief as they may show themselves to be entitled.

Respectfully submitted,

**BUTLER SNOW LLP**

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols
Texas Bar No. 14994900
S.D. Tex. Bar No. 13066
eric.nichols@butlersnow.com
Cory R. Liu
Texas Bar No. 24098003
S.D. Tex. Bar No. 3047640
cory.liu@butlersnow.com
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Phone: (737) 802-1800
Fax: (737) 802-1801

*Counsel for Defendants the Texas State Senate, Sergeant-at-Arms Austin Osborne, and Lieutenant Governor Dan Patrick*

## CERTIFCATE OF SERVICE

A true and correct copy of the foregoing pleading was served on counsel of record for the parties in compliance with the Federal Rules of Civil Procedure by filing with the Court's CM/ECF system on August 16, 2023.

*/s/ Cory R. Liu*
Cory R. Liu
