Case 6:23-cv-00036   Document 17   Filed on 08/17/23 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
August 17, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STEVEN F. HOTZE, M.D., *et al.*, | § § § § | |
| Plaintiffs, | | |
| VS. | § § § § § § | CIVIL ACTION NO. 6:23-CV-00036 |
| THE TEXAS STATE SENATE, *et al.*, | | |
| Defendants. | | |

# ORDER DISMISSING CASE FOR
# LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs Steven Hotze, M.D., Richard Mabray, M.D., and Allesan Paige Streeter filed this action against Defendants the Texas State Senate, Austin Osborne in his official capacity as the Sergeant-at-Arms of the Texas Senate, and Dan Patrick in his official capacity as Lieutenant Governor of the State of Texas. Plaintiffs complain of rules implemented for the Senate impeachment trial of Attorney General Ken Paxton (AG Paxton) in the form of (1) a gag order and (2) the conflict-of-interest disqualification of Senator Angela Paxton (Senator Paxton) to act as a member of the impeachment court. Plaintiffs assert that the rules violate their constitutional rights to free speech, to petition the government for redress of grievances, and the right to equal protection of the laws with respect to the one person, one vote rule. D.E. 1.

Before the Court is Plaintiffs' Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction (D.E. 3, 4). Plaintiffs assert that this matter is an

1 / 12

emergency because the impeachment trial is set to begin on September 5, 2023, just weeks away. Plaintiffs had Defendants served with the lawsuit on August 11, 2023. D.E. 12, 13, 14. Defendants filed their response on August 16, 2023. D.E. 16. Defendants assert that this Court does not have jurisdiction to hear the case and that, if reached, Defendants prevail on the merits of the motion. Defendants also moved, in the context of their response, to dismiss the case under Federal Rule of Civil Procedure 12(b)(1). D.E. 16, p. 2.

On August 16, 2023, the Court heard the matter and each of the parties appeared through counsel and presented arguments. For the reasons set out below, the Court **GRANTS** the motion to dismiss (D.E. 16, p. 2) and **DISMISSES** this case in its entirety for lack of subject matter jurisdiction.

## BACKGROUND

**Impeachment Process**. The Texas constitution vests the power of impeachment (bringing charges) in its House of Representatives. Tex. Const. Art. 15, § 1. The impeachment trial of the Texas Attorney General is delegated to the Texas Senate and is to constitute an impartial trial, with a two-thirds vote necessary to convict. *Id.*, §§ 2, 3. Generally, a senator "who has a personal or private interest in *any* measure or bill, proposed, or pending before the Legislature, shall disclose the fact to the House, of which he is a member, and shall not vote thereon." *Id.*, Art. 3, § 22 (emphasis added).

On May 29, 2023, the Texas House of Representatives issued articles of impeachment against the Texas Attorney General, Warren Kenneth Paxton, Jr. H. Res.

2377, 88th Leg. Sess. (Tex.). The Texas Senate has scheduled a trial on the impeachment charges for September 5, 2023. S. Res. 35, 88th Leg. (1st Special Sess.) (Tex. June 21, 2023). Senate Resolution 35 contains the rules by which the impeachment trial is to be conducted.

**Gag Order**. Rule 10(a) provides that a Gag Order shall be issued. D.E. 4-1, p. 8. Rule 10(b) prohibits impeachment trial decision-makers from discussing the proceedings with the adversaries (House Board of Managers and AG Paxton), their counsel, or anyone other than the impeachment court and its attorneys, officers, and staff—a prohibition of ex parte communications. Last, Rule 10(c) prohibits members from advocating a position on the merits of the impeachment matter prior to deliberations—prohibiting efforts to prejudice the proceedings.

On July 17, 2023, Dan Patrick, as Presiding Officer of the Court of Impeachment, issued a Gag Order (D.E. 4-2) as contemplated by Rule 10(a). The Gag Order is accompanied by a summary of evidence that Patrick considered in which advocates, both for and against impeachment, made prejudicial statements in the media. D.E. 4-2, p. 5. The Gag Order contains findings regarding the extensive publicity surrounding the impeachment proceedings and the serious and imminent harm that existing and expected publicity threatens to the impartial nature of the proceedings. It also finds that, because of the nature of the proceedings, lesser measures to avoid the harm are not available. For instance, the jurors in the impeachment proceedings—all Texas Senators who do not have a conflict of interest—are already determined, and the jury cannot be recomposed. Patrick

found that, if exposed to prejudicial advocacy in the media—particularly by others who are part of the decision-making process—the fairness of the trial is placed in serious jeopardy.

The Gag Order is limited, in that it only applies to the participants in the impeachment proceedings—not the media or the public. D.E. 4-2. It applies to statements that are reasonably expected to be disseminated by the media—not private statements to be held in confidence. And it prohibits such acts with a *mens rea* to materially prejudice the proceedings or interfere with a fair trial. Recitations of the public facts involved in the trial, without comment, are permitted.

**Senator Paxton**.  Members of the Senate serve as members of the court and as jurors. Rules 2, 8, 16. A member with a conflict of interest, particularly the spouse of the party being impeached (Senator Paxton), is not permitted to participate in any decision:

> **Conflict**. A member of the court who is the spouse of a party to the court of impeachment is considered to have a conflict pursuant to Article III, Section 22, of the Texas Constitution. Such member of the court shall be seated in the court of impeachment pursuant to Article 15 of the Texas Constitution. However, *such member of the court shall not be eligible to vote on any matter, motion, or question, or participate in closed sessions or deliberations*.
>
> Notwithstanding any other rule, a member of the court who is the spouse of a party to the court of impeachment shall be considered present and eligible only for the purpose of calculating the number of votes required for any and all matters, motions, and questions under these rules.

D.E. 4-1, pp. 28-29 (Rule 31) (emphasis added).

**Contentions**.  Plaintiffs assert that the Gag Order tramples on their First Amendment right to freedom of speech and to petition the government for redress of

grievances. That is because they have attempted to discuss matters relating to the impeachment of AG Paxton with legislators involved in the process, but those persons have responded that they are prohibited from discussing the matter by the Gag Order. They also assert that, by disqualifying Senator Paxton from participating in deliberations and voting on the matters before the court of impeachment, her constituents have been disenfranchised in violation of the one person, one vote rule.

**Proceedings**.  According to representations in Defendants' response and in open court by both parties, a similar action was filed in July 2023, challenging the Gag Order and the disqualification of Senator Paxton on Texas constitutional grounds in a Travis County, Texas district court.  The state court has set a hearing on the application for a temporary restraining order for August 18, 2023.  This federal action was filed after the state court action, on August 3, 2023.

This Court's August 16, 2023 hearing was strictly conducted on the request for a temporary restraining order and not for a preliminary injunction.  Consequently, the Court did not hear evidence.  Both sides of this dispute did, however, through their respective counsel, provide argument.

## STANDARD OF REVIEW

Federal courts have an affirmative duty to examine sua sponte the basis for subject matter jurisdiction.  *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). When Federal Rule of Civil Procedure 12(b)(1) is invoked during a dispute on the merits, the court should address the jurisdictional attack before addressing any attack on the merits.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom.*, *Cloud v. United States*, 536 U.S. 960 (2002). Rule 12(b)(1) requires dismissal for lack of subject matter jurisdiction if the court lacks statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The burden of proof is on the party asserting jurisdiction—Plaintiffs, here. *Ramming*, 281 F.3d at 161. In examining a Rule 12(b)(1) motion, the court is empowered to consider matters of fact that may be in dispute. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

## DISCUSSION

Defendants challenge the Court's jurisdiction on the following bases: (1) Plaintiffs' lack of standing to sue; (2) sovereign immunity; (3) legislative immunity; (4) judicial immunity; and (5) federalism and abstention doctrines. So long as the Court determines its jurisdiction first, there is no mandatory "sequencing of jurisdictional issues" among multiple jurisdictional challenges. *Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 623 (5th Cir. 2023) (en banc) (citing *Sinochem Intern. Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)).

### A. Standing Rubric

Article III standing, the only type of standing required for this Court to have jurisdiction, "exists at the pleading stage when a plaintiff plausibly alleges (1) an 'injury in fact,' (2) that is 'fairly traceable to the challenged action of the defendant,' and (3) that is 'likely ... redress[able] by a favorable decision.'" *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Injury in fact means that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury," which is "concrete and particularized," as well as "actual or imminent," not "speculative, conjectural, or hypothetical." *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983), *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010), and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

> "To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.' " *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 335 (5th Cir. 2021) (alteration in original) (quoting *Trump v. Hawaii*, ––– U.S. –––, 138 S. Ct. 2392, 2416, 201 L.Ed.2d 775 (2018)). Meanwhile, to establish redressability, a plaintiff must show a "substantial likelihood" that the requested relief will remedy the alleged injury in fact. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 45, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

*Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022).

### B. Gag Order

The Court notes that the Gag Order does not purport to govern Plaintiffs' conduct. They are not legislators, parties, witnesses, or otherwise involved in the conduct of the impeachment trial. And they do not purport to represent the interests of those third parties. While they argued that the Gag Order is broad[1] and covers unspecified "agents" of the persons more specifically bound, they do not purport to be such agents, only that they might want to talk with them and will be told that the agents cannot respond.

Plaintiffs predicate their First Amendment claim on the violation of a right to receive communications from those persons who are subject to the Gag Order. Yet there is no evidence that anything that the putative speakers would have to say will have any meaningful impact on Plaintiffs. Plaintiffs cite *Basiardanes v. City of Galveston* for the proposition that they have standing in this situation. 682 F.2d 1203, 1211 (5th Cir. 1982), *abrogated on other grounds by City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). That case cites *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763–64 (1976), a commercial speech case. There, the question was whether the state could prevent pharmacists from advertising the prices of their prescription medications.

The Supreme Court relied heavily on the importance of the regulated information for the well-being of the recipients of the communication:

---

[1] Plaintiffs have not challenged the Gag Order as constitutionally overbroad.

> As to the particular consumer's interest in the free flow of commercial information, that interest may be as keen, if not keener by far, than his interest in the day's most urgent political debate. Appellees' case in this respect is a convincing one. Those whom the suppression of prescription drug price information hits the hardest are the poor, the sick, and particularly the aged. A disproportionate amount of their income tends to be spent on prescription drugs; yet they are the least able to learn, by shopping from pharmacist to pharmacist, where their scarce dollars are best spent. When drug prices vary as strikingly as they do, information as to who is charging what becomes more than a convenience. It could mean the alleviation of ***physical pain or the enjoyment of basic necessities***.

*Id*. (footnote omitted; emphasis added). Plaintiffs have not identified any such benefit to receiving any information subject to the Gag Order in this case.

In particular, Plaintiffs have not attested that anything about their lives would be different if they did get a communicative response from legislators. Whether legislators agreed, disagreed, or simply commiserated with Plaintiffs, Plaintiffs will not have any greater power to affect the impeachment proceeding from "receiving" communication than they would have by taking the action already available to them of expressing their opinions to representatives and those controlling the process. They have not demonstrated injury in fact.

While Plaintiffs insist that their concern is a right to receive communication, the evidence and arguments indicate that, instead, Plaintiffs' desire is to inform their representatives that they support AG Paxton and that they disagree with the way in which the impeachment is proceeding. They want to be able to send, not receive, communication. In his affidavit, Plaintiff Hotze states that he wanted to talk with State Representative Steve

Toth and Bob Hall to express "the concerns I had with, among other things, the process." D.E. 4-3. And he wanted to talk to others to let them know his position on the impeachment. *Id.* Yet nothing in the Gag Order prevents him from telling anyone his position on the impeachment and its processes. Thus, the requested relief would not redress the harm he professes to suffer.

Plaintiffs have not shown that they have standing to proceed on their challenge to the Gag Order.

### C. Disqualification of Senator Paxton

With respect to the disqualification issue, Plaintiffs predicate standing on their "disenfranchisement" when they are constitutionally entitled to "one person, one vote." This argument is flawed in two important respects. First, they do not argue that Senator Paxton is free of any conflict of interest in the impeachment of her husband. Rather, they take the position that any time an elected representative is unable to deliberate or cast a vote due to a conflict of interest, their entire constituency has *ipso facto* been disenfranchised. They have not cited any authority for the proposition that no legislator, member of a court of impeachment, or juror may ever be disqualified for a conflict of interest. Such a challenge would implicate not just SR 35, but the Texas constitution, Art. 3, § 22, and countless other rules and regulations pertaining to fair legislative, judicial, and impeachment proceedings. They have not demonstrated an injury in fact by precluding a legislator who has a conflict of interest from participating in the impeachment proceedings.

Second, their reliance on the one person, one vote rule is misplaced. Plaintiffs have not cited any authority that this rule applies to any scenario outside of legislative apportionment. And even in apportionment cases, the basis for the rule is the equal protection of the law. *Reynolds v. Sims*, 377 U.S. 533, 561 (1964). But equal protection jurisprudence is based on discrimination. And the basis for discrimination cited in support of the one person, one vote rule in *Reynolds* was location of the voter's residence. *See also, Evenwel v. Abbott*, 578 U.S. 54, 59 (2016) (applying the one person, one vote rule to the drawing of legislative districts). But here, there is no discrimination against voters. Indeed, there is no discrimination because there is a sound basis for disqualification of the impeachment defendant's spouse: conflict of interest.

Plaintiffs have not shown that there is a constitutional right to have a legislator with a conflict of interest act in a matter that is materially related to that conflict, despite that conflict. Much less do they show that they will sustain an injury in fact as a result. Indeed, the provision in SR 35, Rule 31 that Senator Paxton be seated for purpose of determining the necessary number of votes makes the ability of the rest of the Senate to convict her husband more difficult. A two-thirds majority is required to convict. Anything less results in an acquittal. Given that Plaintiffs support AG Paxton and oppose the impeachment proceedings, Rule 31 disqualifying Senator Paxton does not disadvantage them with respect to the vote.

Plaintiffs have not demonstrated an injury in fact related to the disqualification of Senator Paxton.

### D. Remaining Jurisdictional Challenges

Because Plaintiffs have failed to demonstrate standing on any of their claims, the Court need not, and does not, address the additional jurisdictional challenges to Plaintiffs' claims.

## CONCLUSION

For the reasons set out herein, the Court **GRANTS** the motion to dismiss (D.E. 16, p. 2) and **DISMISSES** this action in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**ORDERED** on August 17, 2023.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE